**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                    :
**KEITH FLETCHER, et al.,**         :
                                    :
           Plaintiffs,              :     Civil Action No. 15-206 (ES)
                                    :
      v.                            :     **MEMORANDUM OPINION**
                                    :
**SHERRY YATES, et al.,**           :
                                    :
           Defendants.              :
_____ :

**SALAS, DISTRICT JUDGE**

Plaintiffs Keith Fletcher, Michael Ridley, Kevin Williams, William Von Bosse, Leon Swift and Robert Dase (collectively "Plaintiffs") are involuntarily civilly committed pursuant to the Sexually Violent Predator Act, N.J.S.A. 30:4–27.24, et seq., at the Special Treatment Unit ("STU") in Avenel, New Jersey. Plaintiffs seek to bring this civil rights action *in forma pauperis*. Based on their affidavits of indigence, the Court GRANTS Plaintiffs' applications to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a) and orders the Clerk of the Court to file the Complaint. (*See* D.E. No. 1).

At this time, the Court must review Plaintiffs' Complaint pursuant to 28 U.S.C. § 1915(e)(2) to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Court concludes that the Complaint should be dismissed in part *with prejudice* and in part *without prejudice*.

**I. BACKGROUND**

Plaintiffs bring this civil rights action, pursuant to 42 U.S.C. § 1983, against Defendants Sherry Yates, Administrator of the STU; Jennifer Velez, Commissioner of the Department of Human Services ("DHS"); Gary Lanigan, Commissioner of the Department of Corrections ("DOC"); and Dr. Merrel Main, Director of the STU (collectively "Defendants"). The following factual allegations are taken from the Complaint, and are accepted for purposes of this screening only. The Court has made no findings as to the veracity of Plaintiffs' allegations.

Plaintiffs allege that on March 11, 2014, Administrator Yates and Dr. Main changed the STU's policy of permitting residents to hang curtains across the doors of their cells. (D.E. No. 1, Complaint ("Compl.") ¶ 12). Prior to the policy change, residents could have curtains "below the food port in their cells." (*Id.* ¶ 14). The new policy only permits curtains to be used when the resident is changing or when using sanitary facilities within the cell. (*Id.* ¶ 13). Residents are told that if they want privacy, they can "lock in" their cells. (*Id.* ¶ 16). If a resident is locked in his cell after breakfast around 6:30 a.m. until 7:30 a.m., his cell will not be opened until after count, 12:30 P.M. four to five hours later. (*Id.*).

Plaintiffs next allege that, in 2014, Defendant Yates implemented a policy which allows STU officials to "monitor and record" residents' conversations with their families, friends and attorneys without a warrant. (*Id.* ¶ 22). Plaintiffs also allege that the STU does not have a gymnasium or any indoor recreation, even though every other prison in New Jersey, as well as another sex offender facility (the Adult Diagnostic and Treatment Center), all have such areas available. (*Id.* ¶¶ 24-26). Finally, Plaintiffs allege that over thirty cells in the STU lost electrical power in May 2014 and as of November 2014, the power had not yet been restored. (*Id.* ¶ 35).

Plaintiffs are seeking declaratory judgment and monetary relief. (*Id.* ¶¶ 41-48).

## II. DISCUSSION

### A. Legal Standard

#### 1. Standards for a *Sua Sponte* Dismissal

District courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 28 U.S.C. § 1997e. District courts must *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. § 1915(e)(2)(B) because Plaintiffs seek to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a).

According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive *sua sponte* screening for failure to state a claim[1], the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

---

[1] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 42 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

3

liable for the misconduct alleged." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (italics added).

### 2. Section 1983 Actions

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

### B. Analysis

As an initial matter, the Court notes that to be liable within the meaning of 42 U.S.C. § 1983, a defendant must be a "person." The Supreme Court held in *Will v. Michigan Dep't. of State Police*, 491 U.S. 58 (1989), that a State, a State entity, or an official of a State acting in his or her official capacity is not a "person" within the meaning of § 1983. However, state officials and those acting under color of law sued in their *individual* capacities are considered "persons" for purposes of § 1983 liability. *See Hafer v. Melo*, 502 U.S. 21, 26 (1991). Even so, a plaintiff

must show that an individual official's conduct caused the deprivation of a federally protected right.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  More particularly, the plaintiff must allege that the defendant was personally involved in the deprivation.  *See West*, 487 U.S. at 48.  This is to say that § 1983 liability cannot be premised solely on a theory of respondeat superior.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

Here, Plaintiffs do not specify as to whether they are bringing their Complaint against Defendants in their official capacities, individual capacities, or both.  To the extent Plaintiffs meant to bring the Complaint against Defendants in their official capacities, all four defendants are immune from suit because they are all officials of either the Department of Corrections, the Department of Human Services, or the STU, all of which are considered arms of the State of New Jersey.  *See Will*, 491 U.S. at 70; *Endl v. New Jersey*, 5 F.Supp.3d 689 (D.N.J. 2014); *Lopez v. Harris*, No. 10-4023, 2010 WL 3312274, at *4 (D.N.J. Aug. 19, 2010); *Walsh v. Corzine*, No. 06-6075, 2008 WL 2277098, at *2 (D.N.J. June 2, 2008).  Therefore, Plaintiffs' claims against Defendants in their official capacities are dismissed *with prejudice*.  The Court will now turn to Plaintiffs' claims against Defendants in their individual capacities.

**1. Right to Privacy**

Plaintiffs first argue that Defendants Yates and Main "changed the policy of permitting residents to hang curtains across the doors of their cells."  (Compl. at 4).  Plaintiffs aver that "the new policy . . . only permits curtains to be used when the resident is changing or when using sanitary facilities within the cell."  (*Id.*)  Plaintiffs continue to argue that this policy violates inmates' right to privacy under N.J.A.C. 10:36A-2.3(1), the New Jersey State Constitution, and the Fourteenth Amendment to the United States Constitution.  (*Id.* at 12).

First, Sexually Violent Predators ("SVP's") do not have a reasonable expectation of privacy within their cells. *See Anderson v. DaCosta*, No. 10-5835, 2011 WL 2223713, at *9 (D.N.J. June 1, 2011) (citing *Hudson v. Palmer*, 468 U.S. 517, 530 (1984)); *see also Deavers v. Santiago*, 243 F. App'x 719, 721 (3d Cir. 2007). Though it has been held that inmates, and by extension SVPs, retain the right to "not be viewed naked by a member of the opposite sex," *Johnson v. Pennsylvania Bureau of Corrections*, 661 F. Supp. 425, 430 (W.D. Pa. 1987), Plaintiffs here concede that the policy at issue allows privacy while changing or using the bathroom. (*See* Compl. at 4). Indeed, it is true that SVPs do not lose all constitutional protections by reason of their commitment. *See Youngberg v. Romeo*, 457 U.S. 307, 315 (1982). Nevertheless, an SVP's constitutional rights are limited by the fact of his placement and by balancing their liberty interests against "legitimate government objectives and not tantamount to punishment." *Id.* at 320 (citing *Bell v. Wolfish*, 441 U.S. 520, 539 (1979)).

Here, Plaintiffs have not alleged any reason that their interest in remaining behind a curtain at all times outweighs the legitimate government interests of "maintaining jail security and effective management of [the] detention facility." *Belton v. Singer*, No. 10-6462, 2011 WL 2690595, at *9 (D.N.J. July 8, 2011) (quoting *Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004)). Therefore, Plaintiffs have not plead a right to privacy violation here, even under the most forgiving standard. Thus, Plaintiffs fail to state a claim under either the Fourteenth Amendment to the United States Constitution or the analogous provision of the New Jersey State Constitution.[2]

---

[2] N.J.S.A. Const. Art. I, ¶ 7 ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]"). Additionally, because alleged violations of both the United States Constitution and the New Jersey State Constitution overlap, the Court will analyze them together. *See Johnson v. Yurick*, 156 F. Supp. 2d 427, 436 (D.N.J. 2001) (First Amendment); *Rodriguez v. City of Passaic*, 730 F. Supp. 1314, 1328 n.8 (D.N.J. 1990) (Fourth Amendment); *Prevard v. Fauver*, 47 F. Supp. 2d 539, 544 (D.N.J.

Plaintiffs also fail to state a claim under N.J.A.C. 10:36A-2.3(a)(1). That regulation establishes that residents of STUs shall have "[t]he right to privacy . . . and the right to dignity." N.J.A.C. 10:36A-2.3(a)(1). However, the regulation makes clear that this right "may be curtailed, suspended, or denied in accordance with internal management procedures and policies." *Id.* Plaintiffs make no argument that the policy at issue was enacted in violation of any internal procedures, nor do they aver that the policy is inconsistent with any legitimate interest. Thus, Plaintiffs have also failed to state a claim under N.J.A.C. § 10:36A-2.3 and the claim against Defendants Yates and Main is dismissed *without prejudice*.[3]

**2. Right to Communicate with Counsel**

Second, Plaintiffs assert that Defendant Yates "maintained the unconstitutional practice of monitoring and recording residents [sic] phone conversations" in violation of the First, Fourteenth, and Sixth Amendments to the United States Constitution, the analogous provisions in the New Jersey State Constitution, and N.J.A.C. § 10:36A-2.3(a)(7). (Compl. at 7).

Generally, a telephone call can be monitored and recorded without violating the Constitution so long as one participant in the call consents to the monitoring. *United States v. White*, 401 U.S. 745, 752 (1971). By extension, the Third Circuit has held that when an inmate challenges the legality of a wiretap, implied consent is apparent when the inmate is given adequate notice that the call is being recorded, and that the inmate continues with the call. *See United States v. Hodge*, 85 F. App'x 278, 281 (3d Cir.2003). Additionally, the right to communicate

---

1999) (Eighth Amendment).

[3] Plaintiffs plead violations of N.J.A.C. § 10:36A-2.3(a) in Counts Two and Three of the complaint as well. Because Plaintiffs never allege that the policies or practices at issue were inconsistent with any legitimate interest or in violation of any internal procedures, all claims pursuant to N.J.A.C. § 10:36A-2.3(a) are dismissed *without prejudice*.

with friends, family, and even legal counsel by telephone is not unlimited. *See Inqalls v. Florio*, 968 F. Supp. 193, 203–04 (D.N.J. 1997) ("[L]imited access to telephone calls . . . is not a constitutional violation so long as inmates can communicate with their counsel in writing or in person by visits."). This standard is applied in the civil commitment context. *See Aruanno v. Main*, No. 07-3867, 2010 WL 251590, at *11 (D.N.J. Jan. 15, 2010).

Here, it is unclear from the Complaint whether Plaintiffs knew they were being monitored and recorded at the time they were making the phone calls that are the subject of the Complaint. It is also unclear as to whether the telephone is the only means by which Plaintiffs can communicate with friends, family, or legal counsel. Given the lack of information provided by Plaintiffs, at this juncture, the Court is unable to find that they have properly alleged a violation of their rights under *Iqbal*. *See* 556 U.S. at 678. Therefore, Plaintiffs' claim against Defendant Yates that their phone calls were unlawfully monitored and recorded in violation of the First, Fourteenth, and Sixth Amendments is dismissed *without prejudice* for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

### 3. Equal Protection Clause Violation[4]

Next, Plaintiffs charge that Defendants Velez and Lanigan violated their Equal Protection right under the Fourteenth Amendment, as well as their right to physical exercise under N.J.A.C. § 10:36A-2.3(a)(10), by placing them in a facility without an indoor gym. (Compl. at 13).

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, "which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne*

---

[4] Plaintiffs' Counts Three and Four both assert an equal protection claim based on lack of access to an indoor gym. The Court combines them for purposes of efficiency.

*Living Ctr.*, 473 U.S. 432, 439 (1985) (citation omitted). To bring a successful claim pursuant to § 1983 for a denial of equal protection, a plaintiff must plead sufficient facts to indicate the existence of purposeful discrimination and that he was treated differently than others similarly situated to him. *See Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ*., 587 F.3d 176, 196 (3d Cir. 2009).

Here, Plaintiffs' Equal Protection claim is limited solely to the assertion that inmates at the Adult Diagnostic and Treatment Center ("ADTC") are provided with an indoor gym that the inmates can use during times of inclement weather while inmates at the STU are not. (Compl. at 9-10). Plaintiffs' allegations do not indicate that inmates of ADTC are of another race, ethnicity, or gender than that of the plaintiffs, or that the reason for the different conditions involves race, ethnicity, or gender. *See Georges v. Ricci*, No. 07-5576, 2008 WL 2036799, at *2 (D.N.J. May 9, 2008) ("Plaintiff's allegations are race-, gender- or ethnicity-neutral since Plaintiff's Complaint does not indicate that inmates of race, ethnicity/gender other than that of Plaintiff's were consistently allowed better conditions of confinement while inmates of Plaintiff's race, ethnicity/gender were consistently subjected to worse conditions because of their suspect classification.").

Therefore, Plaintiff has not alleged sufficient facts for the Court to reasonably infer there was purposeful discrimination. Nor have they alleged facts from which the Court can infer there was no rational basis for the difference in conditions. *See Small v. Warren*, No. 15-8886, 2016 WL 2770810, at *5 (D.N.J. May 13, 2016). Thus, Plaintiffs' Equal Protection claim against Defendants Velez and Lanigan is dismissed *without prejudice*.

### 4. Conditions of Confinement – Loss of Electricity

Lastly, Plaintiffs contend that Defendants Yates and Main violated the Fourteenth Amendment to the United States Constitution when they "forc[ed] the plaintiffs to remain in cells without electrical power for over several months and continuing." (Compl. at 14).

Generally, the Fourteenth Amendment requires that civilly committed persons not be subjected to conditions that amount to punishment, *Bell*, 441 U.S. at 536-37, within the bounds of professional discretion, *Youngberg*, 457 U.S. at 321-22. Specifically, in *Youngberg*, the Supreme Court instructed that civilly committed persons have constitutionally protected interests that must be balanced against the interests of the State. See 457 U.S. at 321-22. The Constitution is not concerned with *de minimis* restrictions on patients' liberties. See *id.* at 320.

Moreover, "due process requires that the conditions and duration of confinement [for civilly confined persons] bear some reasonable relation to the purpose for which persons are committed." *See Seling v. Young*, 531 U.S. 250, 265 (2001). The condition under which an SVP is confined must be "so egregious, so outrageous that it may fairly be said to shock the contemporary conscience" to be actionable. See *Deavers*, 243 F. App'x at 722 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)); *see also Belton v. Singer*, No. 10-6462, 2011 WL 2690595, at *8 (D.N.J. July 8, 2011) (finding that "mail restrictions, strip searches, leaking toilets and ceilings and bed bug infestation, and the confiscation of electronic equipment" are not extreme conditions of an SVP's confinement).

Here, Plaintiffs complain that the electricity in their cells was out for approximately six months and counting as of November 2014. (Compl. at 12). Normally, an allegation of a broken light would not rise to the level of an extreme deprivation sufficient to satisfy as a due process violation. *See, e.g., Love v. Dep't of Corr.*, No. 13-1050, 2014 WL 46776, at *5 (D.N.J. Jan. 6,

2014); *see also Thomas v. Warren*, No. 13-4150, 2013 WL 3897698, at *3 (D.N.J. July 29, 2013) (holding that "poor lighting" for 23 days fails to state a claim for an unconstitutional condition of confinement). However, "the circumstances, nature, and duration of the deprivation are critical in determining whether the condition" rises to the level of such a violation. *Love*, 2014 WL 46776, at *5 (citing *Fantone v. Herbik*, 528 F. App'x 123, 126-28 (3d Cir. 2013)). Plaintiffs here have alleged that their lights were out for six months and that Plaintiffs were not moved to cells with adequate lighting in that time. Such a condition may suggest a due process violation considering that "persons involuntarily committed are entitled to more considerate treatment and better conditions of confinement than are persons who are being criminally punished." *See Youngberg*, 457 U.S. at 321-22.

However, even if lack of electricity would meet the standard of an extreme deprivation, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08, *see also Iqbal*, 556 U.S. at 676-77 (Government officials "may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior," civil rights plaintiff's must plead that each defendant "through the official's own individual actions, has violated the constitution"). Here, Plaintiffs do not provide any facts to suggest that Defendants Yates and Main were involved in depriving Plaintiffs of electricity in their cells. *Id.* Without such factual allegations, this claim must be dismissed *without prejudice*.

## III. CONCLUSION

For the reasons stated above, all of Plaintiffs' claims Defendants are dismissed *without prejudice* as to Defendants in their individual capacities, and dismissed *with prejudice* as to Defendants in their official capacities.  Should Plaintiffs wish to file an amended complaint to address the deficiencies identified herein, they must file a motion to amend which complies with all applicable rules.

An appropriate order follows.

*s/Esther Salas*  
**Esther Salas, U.S.D.J.**